## Parkland School District v. Parkland Educational Personnel Support Association

C.P. of Lehigh County, no. 1998-C-0936.

*C. Steven Miller,* for petitioner.
*Charles L. Herring,* for respondent.

FORD, *J.,* March 28, 2000—On December 28, 1999, we entered an order granting a petition to review and vacate a labor arbitration award under the Pennsylvania Public Employee Relations Act, 43 P.S. §§1101.101-

1101.2301. We explain the reasons for our decision in this opinion.

We set forth the factual and procedural history which was submitted to us by the parties for the July 12, 1999 argument that we conducted on this petition. We believe that what is set forth below is not disputed by the parties.

The petitioner is the Parkland School District which is a third class school district located in Lehigh County, Pennsylvania. It is subject to the provisions of the Public School Code of 1949, as amended, 24 P.S. §§1-101—27-2702.

The respondent is the Parkland Educational Personnel Support Association/ESPA/PSEA/NEA. It is an employee organization for the public employees of the district.

The district and the association are parties to a collective bargaining agreement which was effective July 1, 1995 through June 30, 1998. It is the interpretation of a provision of the agreement, article 18, which is at issue here. The relevant portion of article 18 reads:

*"Article 18*

"Position vacancies . . .

"Section 2. Full-time custodial, maintenance and six-hour cafeteria positions shall be posted for a period of five working days. The employee with the most district-wide seniority who applies shall be awarded the position, providing the person has received the highest rating in the interview for the position, as determined by the supervisor, with the employee's right to file a grievance."

Article 21 of the agreement provides for arbitration of grievances under section 903 of PERA, 43 P.S. §1101.903.

164

We also set forth article 3 of the agreement:

*"Article 3*

"Management clause

"Section 1. It is understood and agreed by the parties hereto, unless otherwise provided in this agreement that the association recognizes the prerogatives of the district to operate and manage its affairs in all respects in accordance with its responsibilities and in accordance with its power and authority.

"Section 2. Statutory savings clause—Nothing contained herein shall be construed to deny or restrict to any employee such rights as he/she may have under the Public Employee Relations Act, Act 195, or the Local Agency Law."

A notice, dated July 1, 1996, was posted by the district, with a job description, seeking applicants for a custodian "A" position. The notice was directed to all district employees.

In response to the notice, six district employees, who were association members, applied for the position. One individual, Gary Greenawalt, withdrew his name from consideration. The other five applicants were interviewed for the position by an interviewing committee of the district. The interviewing committee used a system whereby a higher score for a candidate in comparison to another represented a higher rating for that first candidate. The ratings assigned by the committee to the applicants were: Diane Weslosky-167, Raymond Sommerville-164, James Schick-161, Terry Messinger-119, and Ronald Leaser-52.

The applicant with the most seniority was Terry Messinger.

After the interview process was completed, the district decided that none of the applicants was qualified for the position and all applicants were rejected. The applicants were duly advised of this by letter from the district. The notification letters were dated August 19, 1996.

On September 30, 1996, the association filed a grievance alleging that the district's rejection of the applicants violated article 18. The association classifies the grievance as a "group grievance" although the identity of the group is not specified. The grievance was denied by the district. The association requested arbitration on December 19, 1996.

The arbitration was held on March 16, 1998 before Patrick McFadden, arbitrator. In the arbitration, Diane Weslosky, the person with the highest interview score but lower seniority than others, was identified as the grievant. The arbitrator entered an award on March 24, 1998. The arbitrator sustained the grievance and directed the district to offer the next available custodian "A" position to the grievant. An opinion dated March 24, 1998 accompanied the decision granting the grievance.

On April 23, 1998, the district filed its "petition for review and application to vacate arbitrator's award" with this court.

An argument was held on the petition on July 12, 1999. The matter was fully briefed by the parties.

On December 28, 1999, we entered our order granting the petition and vacating the award of the arbitrator. We indicated in the order that the district "is at liberty to fill the position of custodian 'A' according to its normal, mandated procedures in accord with the collective bargaining agreement of 1995-1998."

The association filed its notice of appeal to the Commonwealth Court of Pennsylvania on January 6, 2000.

This matter was submitted to us on the record which was developed before the labor arbitrator. We did not supplement that record in making our review.

The standard for our review of the labor arbitration award was recently set forth by the Pennsylvania Supreme Court in *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA-NEA),* 560 Pa. 135, 743 A.2d 405 (1999).

In *State System of Higher Education,* the Supreme Court made an exhaustive review of prior decisions on the role of a reviewing court on a challenge to a labor arbitration award. The Supreme Court then set forth a uniform standard to eliminate irregularity among the courts of the Commonwealth based on differing interpretations of decisions prior to *State System of Higher Education.* We now engage in the review process mandated by the Supreme Court.

First, we are obligated to render great deference to the arbitrator's decision in light of the many benefits that arbitration provides the parties to a collective bargaining agreement. We have given that deference and we have looked for any reasonable interpretation of the contract language to support the decision of the arbitrator.

We next considered whether an exception exists in this case to the deference or finality which is normally accorded to the arbitrator. It is our conclusion that the exception, which is meant to apply in a small minority of cases, exists here. We reach this conclusion after the two-pronged analysis described in *State System of Higher Education.*

First, we must determine whether the issue of this employment position is properly defined within the terms of the collective bargaining agreement. It is. Article 18 specifically addresses custodial positions. In other words, the issue of whether the district properly addressed the filling of a custodial position was properly before the arbitrator.

The second prong requires that we analyze whether the arbitrator's interpretation of the relevant portion of the agreement, article 18, "can rationally be derived from the collective bargaining agreement." *State System of Higher Education* at p. 413. As the Supreme Court stated, "a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *State System of Higher Education* at p. 413. This is where the decision and reasoning of the arbitrator fail.

Article 18 mandates that the employee applicant "with the most districtwide seniority" get the position "providing the person has received the highest rating in the interview for the position, as determined by the supervisor."

If Diane Weslosky had the most seniority among the applicants and the highest score, the district would have no discretion. In such a situation, the district would have to award the position to her. Unfortunately for Ms. Weslosky, she lacked one of the prerequisites for the position. She did not have the most seniority among those vying for the position. Thus, the clear language of article 18 does not mandate that the district award the custodian "A" position to Diane Weslosky. The district chose not to award the position to her. This comports with an

acceptable exercise of discretion vested in the district under article 3, management clause, by which the association indicates its recognition of "the prerogatives of the district to operate and manage its affairs in all respects in accord with its responsibilities and in accordance with its power and authority."

The arbitrator concluded that article 18 required the district to offer the position to Diane Weslosky. The decision of March 24, 1998 explains the thinking of the arbitrator in reaching that result. With due respect to the arbitrator, the explanation he offers demonstrates a distortion of the clear meaning of article 18 to achieve a result that he deemed desirable. There is no rational basis in the language of article 18 to justify the conclusion of the arbitrator that the district must offer the position to Diane Weslosky.

It is apparent from the decision of the arbitrator that he finds the agreement that the parties reached in article 18 to be distasteful. He reveals his dissatisfaction with the article in the following language:

"However, when reviewing this article [18], the undersigned [arbitrator] is troubled by certain applications thereof.

"(1) Under the letter of the language, if the grievant and one other district employee would have submitted application and the other employee had one-day more seniority, regardless of how high the grievant scored, the district could reject the grievant for the position.

"(2) Had all the district eligible bargaining unit employees applied, and it were determined that none were even remotely qualified for the position and all scored extremely low, the district by the letter of the language would still be compelled to award the position to the

most senior applicant if he/she obtained the highest rating, even though they may be not remotely qualified.

"(3) In the same context, if one employee were to apply for a vacant position, they would automatically be the most senior and receive the highest rating.

"(4) Under the current issue, had the grievant been the lone applicant, she would have been awarded the position." (March 24, 1998 decision of arbitrator, p. 14 of 16 unnumbered pages.)

After expressing applications of the agreement that are unsettling to him, the arbitrator explains why he entered the award directing the district to offer the position to Diane Weslosky.

"Therefore, we must conclude that when the grievant [Diane Weslosky] obtained the highest rating under the provisions of article no. 18, the other four district applicants were thereby disqualified and therefore no longer eligible, consequently granting the grievant [Diane Weslosky] the most districtwide seniority and highest rating." (March 24, 1998 decision of arbitrator, p. 15 of 16 unnumbered pages.)

There is no reasonable reading of article 18 which justifies this conclusion reached by the arbitrator. Rather, article 18 only mandates that the employee "with the most districtwide seniority" be awarded the position if she "has received the highest rating in the interview for the position." While the grievant, Diane Weslosky, received the highest rating, she did not have the most seniority. Accordingly, the district was justified in declining to offer her the position.

An acceptance of the reasoning of the arbitrator requires that the court turn a blind eye to the clear language of article 18 of the agreement. In accord with the

standard established by the Pennsylvania Supreme Court, we must conclude that the arbitrator's interpretation of article 18 is not rationally derived from the collective bargaining agreement. Accordingly, the district's decision not to award the position to any of the five applicants was a legitimate exercise of its discretion.